PAYNE, Director General and Agent, v. DOUGLAS. (No. 1301.)

(Court of Civil Appeals of Texas. El Paso. March 30, 1922. Rehearing Denied April 27, 1922.)

1. Trial ⬅️256(10)—Charge referring to petition for specifications of negligence held sufficient in absence of request.

Where the court had previously stated to the jury the issues tendered by the petition, a charge predicating recovery for plaintiff on a finding that the master's apparatus was defective as alleged in the petition, and that it was negligence to allow it to be so defective, was not affirmatively erroneous as permitting the jury to find negligence not alleged in the petition, and was sufficient where there was no request by defendant for a more specific charge as to the acts of negligence.

2. Master and servant ⬅️291(4)—Charge held not to refer to failure to inspect.

In an action for injuries to a railroad fireman by the falling of a water spout upon him, a charge, predicating recovery on a finding that the water spout was defective and that it was negligence on the part of defendant to allow it to be in such condition, was not objectionable as referring to defendant's failure to inspect the spout.

3. Damages ⬅️216(1)—Refusal of requested charge to disregard simulated injuries held erroneous.

Where the defendant expressly pleaded that the injuries claimed by plaintiff to be permanent were simulated, it was error to refuse a requested charge not to find for plaintiff for any simulated injuries, even though the general charge on damages would have excluded such allowance, since defendant was entitled to have the jury's attention expressly directed to that issue.

4. New trial ⬅️99—Newly discovered evidence which is original and also rebuttal and impeaching requires new trial.

Where the newly discovered evidence, though in a sense rebuttal and impeaching, was also original evidence as to the extent of plaintiff's injuries, it was sufficient to authorize the new trial.

5. New trial ⬅️102(3)—Showing of diligence to procure evidence before trial held sufficient.

An affidavit by defendant's claim agent that he had investigated as far as possible to locate witnesses who could testify to plaintiff's condition before the trial, but had not heard of the witnesses on whose testimony the motion for new trial was based before that trial, with statements by those witnesses that they had not informed any one of the facts to which they would testify prior to the trial, shows sufficient diligence to entitle defendant to a new trial.

Appeal from District Court, Jones County; W. R. Chapman, Judge.

Action by C. D. Douglas against Walker D. Hines, Director General of Railroads, in which John Barton Payne, as Director General and Agent, was substituted as defendant. Judgment for the plaintiff, and defendant appeals. Reversed and remanded.

Jno. B. Howard, of Pecos, Thomas & Pope, of Anson, and Thompson, Barwise, Wharton & Hiner, of Fort Worth, for appellant.

Joe C. Randel, of Hamlin, and Evans & McCoy and B. Q. Evans, all of Greenville, for appellee.

WALTHALL, J. This suit was instituted by appellee, C. D. Douglas, on January 22, 1920, against Walker D. Hines, Director General of Railroads to recover damages for personal injuries, but later substituting as sole defendant John Barton Payne, Director General and Agent, appellant herein.

Appellee alleged that he was in the service of appellant as fireman on one of appellant's engines and train, and that on the 16th day of December, 1919, while making a run over the Wichita Valley Railroad and the Abilene & Southern Railroad, and when the train reached Hamlin, the train stopped at a water tank to take water; that appellee took his position on the tender, pulled down the water spout, and when the tank was full of water he raised up the spout as far as was usual and gave it the usual shove upward, expecting the weights usually on the spout to pull the spout upward; after giving the spout the usual shove, he turned and stooped down to shut the tank door, when the spout fell on account of the absence of the weights, or some other defect, and struck appellee across the back of the neck with great force, knocking him down off the tender to the ground causing the injuries complained of, which he alleged to be serious and permanent. The negligent acts assigned and complained of are the following:

"(4) Plaintiff shows that it was the duty of the defendant to have equipped said water tank with one or two iron weights that would have weighed at least 50 pounds that were commonly used to pull up and hold in position the water spout, but that on this occasion the defendant had failed and neglected to provide such weights, and only one small weight was in use, and it was insufficient to pull the spout up and hold it in position when the plaintiff shoved the spout upward;" and failure "to inspect and ascertain the condition of the water spout and the absence of the weights thereon, and had failed and neglected to keep same in repair."

Appellant answered by general demurrer, special exceptions, general denial, specially

denied that he was guilty of the negligent acts complained of, alleged that appellee and the railroad or the Railroad Administration for which appellee was working, at the time of the alleged injuries, were engaged in interstate commerce, and that the water spout and tank with which it was connected were used for watering interstate locomotive engines engaged in handling interstate commerce, pleaded the federal Employers' Liability Act (U. S. Comp. St. §§ 8657–8665) as to assumed risk, specially denied that appellee sustained any permanent injuries, and alleged that appellee was faking and simulating any alleged serious injuries that he was claiming.

The case was tried with the aid of a jury and submitted upon the general issue as to the condition of "the water tank on the Abilene Southern Railway Company at Hamlin, Tex." The jury returned a verdict in favor of appellant in the sum of $10,000, and for which judgment was rendered against appellant as Agent of the United States in its administration of the affairs of the Wichita Valley Railway Company.

[1] Appellant's first and second assignments and the propositions thereunder are directed to the following general charge given by the court:

"If you believe from the evidence that on or about the 16th day of December, 1919, the plaintiff was in the employ of the defendant as a fireman on one of his engines, and that while so employed the spout of the water tank on the Abilene Southern Railway Company at Hamlin, Tex., fell and injured plaintiff, as alleged in his petition, and if you further believe from the evidence that the water spout was defective and unfit for service as alleged in plaintiff's petition, and if you further believe from the evidence that it was negligence on the part of the defendant to allow said spout to be in such condition, if you find that it was in such condition, and that such negligence, if any, was the direct and proximate cause of said water spout falling and was the direct and proximate cause of the plaintiff's injuries, if any, and if you believe from the evidence that plaintiff did not assume the risk, then you will find for the plaintiff."

The 'two grounds of error assigned, under the two propositions substantially, are: The appellee in his petition alleged specific acts of negligence, that is, alleged in what manner and way appellee was injured, and as to what acts constituted the alleged negligence, and the court in the charge referred the jury to the petition to ascertain therefrom the acts of negligence, when the court in the charge should have submitted the specific acts of negligence pleaded and raised by the evidence, and not have referred the jury to the petition to find, ascertain, and pick out the acts constituting the negligent acts complained of. The above ground of objection was duly called to the court's attention by a special exception, but the exception was by the court overruled.

The court, in the former portion of the charge, in stating the issues tendered in the petition, after stating the capacity in which appellee was then serving the appellant, and appellee's duty, said:

"That plaintiff took his position on the tender attached to said engine, pulled down the water spout, and that when the tank was full of water he raised up the spout as far as was usual and gave it the usual shove upward; that he expected the weights that were usually on said spout to pull the water spout backward; that, after giving the spout the usual shove, he then turned and stooped to shut the tank door; that then the spout fell on account of the absence of the weights or on account of some other defects, and struck the plaintiff across the back of the neck, knocking the plaintiff off the tender to the ground, causing the injuries complained of."

Appellant did not request a more specific charge as to the acts of negligence.

The charge does not present affirmative error on the grounds presented under the first two assignments. In St. Louis Southwestern Ry. Co. v. Harrison, 32 Tex. Civ. App. 368, 73 S. W. 38, in which a writ of error was refused, the court said:

"The charge did not state the various acts of negligence set up by plaintiff, but referred the jury to the acts of negligence charged in plaintiff's petition, and authorized a recovery if they found such negligence to exist. * * * If the appellant desired a more specific charge as to the acts of negligence, he should have asked a charge covering this omission."

See, also, Missouri, K. & T. Ry. Co. of Texas v. Swift (Tex. Civ. App.) 128 S. W. 450; St. Louis Southern Ry. Co. of Texas v. Addis (Tex. Civ. App.) 142 S. W. 955; Freeman v. McElroy (Tex. Civ. App.) 149 S. W. 428.

The charge complained of, except as to the negligence assigned, is similar to the charge submitted and discussed in Galveston, H. & S. A. Ry. Co. v. Parvin, 27 Tex. Civ. App. 60, 64 S. W. 1008, in which a writ of error was refused.

[2] The above-quoted charge is not subject to the criticism contained in the proposition under the third assignment, on the theory of failure to inspect said water spout. The charge makes no reference to a failure to inspect.

[3] Propositions 1 and 2 under the fourth assignment complain of the refusal of the court to give the following special instruction:

"You are instructed that if you believe and find from the evidence in this case that the plaintiff is simulating any of his injuries (if any), then you are instructed that you return a verdict herein for the defendant as to such injuries (if any) that he is simulating, if he is."

Under the evidence the requested charge or a similar one submitting the issue there tendered should have been given.

Appellee refers us to portions of the court's main charge which it is claimed sufficiently submits the issue sought to be submitted in the refused special charge, but we do not concur in that contention.

Appellant specially pleaded that, as to all the permanent and serious injuries plaintiff is claiming, he did not sustain them, but that he is simulating and faking them. As said by the Supreme Court in Galveston, H. & S. A. Ry. Co. v. Washington, 94 Tex. 510, 63 S. W. 534, while it is true that the general terms in which the court's charge is expressed would, as a matter of law, include the defenses as presented by the special charge, and the judge who tried the case believed that the charges given embraced the special charge, it is not to be supposed that the jury considered an issue not developed by the charge of the court; that under such circumstances the defendant had the right to call upon the court to submit specially the issue expressed in the special charge; that without this is done the jury, in rendering a general verdict under a charge so general as that given, may have disregarded a defense which they might have given effect to if it had been brought to their attention  Much evidence is found in the record relating to the issue sought to have been submitted by the requested special charge.  The verdict is for a large amount, and we are led to believe that the greater amount of it is based upon the idea the jury must have had that the injuries plaintiff claimed to have sustained and from which he claimed to have been suffering up to the time of the trial were serious and permanent.  The issue that he had not sustained serious and permanent injuries, and that he was simulating and faking such injuries, were pertinently presented in appellant's answer and by the special charge, and we have concluded that the special charge, or a similar charge submitting that issue, should have been given.

The propositions under the fifth and sixth assignments are based upon the refusal of the court to grant a new trial on account of newly discovered evidence.

[4] Having concluded that the case must be remanded on other grounds, we will content ourselves with saying that the evidence sought to be secured as newly discovered is material on the issue of the seriousness and permanency of the injuries sustained and will briefly consider the character of the evidence and the diligence used by appellant to secure it.  While the evidence to which we will refer is largely in rebuttal of the evidence of the appellee, and partakes of the nature of impeaching evidence, it is also original evidence, in that it tends to show that appellee did not sustain serious or permanent injuries, and, we think, on that ground formed a proper basis for the motion.  Huggins v. Carey, 108 Tex. 358, 194 S. W. 133; American Indemnity Co. v. Hubbard (Tex. Civ. App.) 196 S. W. 1011; Lancaster et al. v. Settle (Tex. Civ. App.) 204 S. W. 772, and cases cited.

[5] One of the principal witnesses whose evidence was sought to be used on the hearing of the motion for a retrial was Mrs. Mary Charles.  Her sworn statement was attached to and made a part of the motion for a new trial.  She said she was 63 years old and resided in Alba, Wood county, Tex., and had resided there for 18 or 19 years; had known appellee for some 6 or 7 years—

"To-day, February 4 (1921), is the first time I have told any one representing the Director General of Railroads about what I have seen and know as set out above.  I have told this because I had not, from my knowledge of this man's acts, thought he was damaged much, if any, and have only recently learned that he had secured judgment, and believe that such judgment is a miscarriage of justice."

Dr. Faulk testified on the hearing of the motion: He lived at Alba, Wood county, Tex., and had examined appellee on two occasions and had observed him on his crutches.

James A. Jones, the general claim agent for the two railroads while under federal control, by sworn statement made a part of the motion for new trial, said that he, in Alba, Tex., procured the affidavits of Mrs. Charles and Dr. Faulk; that he had never learned of the facts, and that no one ever told him what Mrs. Charles and Dr. Faulk would testify to until on the 4th day of February, 1921, when each of them revealed to him the facts shown in their affidavits, and that he had made diligent effort prior to the trial to discover in Alba, Tex., all of the facts relative to the conditions of appellee, and that he did not know of, and could not, prior to the trial of the case, learn, the facts mentioned in the affidavits of Mrs. Charles and Dr. Faulk, and had no intimation or notice that the parties mentioned would so testify; that, after the trial and judgment was returned, he was instructed by the attorneys representing defendant to go to Alba and make additional investigation; that since the judgment was rendered and the people in Alba no doubt knew about it, that probably people who would not talk before the trial might talk at that time, and that he could not have procured what Mrs. Charles and Dr. Faulk knew until after the trial of the case.  Appellant filed no controverting affidavit as to diligence used by appellant to secure the newly discovered evidence.  As said in American Indemnity Co. v. Hubbard, supra, it is a matter of general knowledge among lawyers that persons who have knowledge with reference to a case pending, or on trial, will refrain from discussing the same because they do not wish to be witnesses; but after the trial the restraint is removed, and they will talk more freely.  We have concluded that the record shows that appellant used due diligence to secure the new-

ly discovered evidence, and that the motion should have been granted.

There are other assignments and propositions found in appellant's brief, but the matters complained about refer to matters not likely to occur on another trial, and we need not discuss them.

For errors referred to, the case is reversed and remanded.