## NATIONAL INDEMNITY UNDERWRITERS OF AMERICA v. BLEVINS.

### No. 1895.

Court of Civil Appeals of Texas. Eastland.
May 5, 1939.

Rehearing Denied June 2, 1939.

Lightfoot, Robertson, Gano & Johnston, of Fort Worth, for plaintiff in error.

Scarborough & Ely, of Abilene, for defendant in error.

LESLIE, Chief Justice.

This is a suit arising under the Workmen's Compensation Act, Vernon's Ann. Civ.St. art. 8306 et seq., wherein Bill Blevins was the employee, National Indemnity Underwriters of America, the insurer, and Knickerbocker Contracting Company, the employer.

The suit was tried on plaintiff's second amended original petition, wherein plaintiff alleged that on or about April 2, 1936, he was an employee of R. O. Cannon and A. B. Knickerbocker, operating as partners under the trade name of Knickerbocker Contracting Company, in Crane County, Texas, doing "connections" work, being the laying of a water line and an oil line from a well in Crane County to a tank; that his employer was a subscriber under the Employers' Liability Act of the State of Texas at the time of his injury; that on the second day of April, 1936, while being carried out to the place of his work in a pick-up truck belonging to and being operated by the Knickerbocker Contracting Company for the purpose of transporting its employees in the course of its work, plaintiff sustained an injury, in that while he was riding in said truck the driver went over a rough place in the road at a high rate of speed, causing plaintiff to be thrown into the air and against the side of said truck, etc.

The defendant answered by general demurrer, general denial and special exceptions. The general demurrer was overruled and trial was had before the court and jury. The case was submitted upon special issues and upon the jury's answers thereto judgment was rendered in favor of the plaintiff, and the Indemnity Company appeals. Other facts essential to an understanding of the record and the various propositions presented will be set out in the discussion and disposition of the respective points.

Plaintiff-in-error groups the first nine propositions and briefs them together. They raise closely related questions and will be considered together. The first one is to the effect that in compensation cases tried before a jury it is essential that the claimant eliminate subsection 1 of section 1, Art. 8309, before attempting to establish his wage rate under subsection 3 of the statute. The same question as in proposi-tion one is presented with reference to subsection 2 of sec. 1 of said article. Under this theory the plaintiff-in-error complains that the court should not have submitted issue 15 reading as follows: "From a preponderance of the evidence, what do you find to be the average weekly wages of the plaintiff, Bill Blevins? Answer in dollars and cents, if any." The jury answered "$22.50" per week. This case was tried on the theory that the only proper method of fixing the wage rate was under what is known as the "just and fair" method provided for in Workmen's Compensation Act (subsection 3, sec. 1, Art. 8309). In other words, the case was tried on the theory that the injured employee had not worked 300 days in the year preceding his injury and that no other employee had worked substantially the whole year in the same or similar employment in the same or surrounding territory.

We agree with plaintiff-in-error that before a plaintiff as an employee or beneficiary of an employee can recover compensation under the compensation statute, based upon any other element of the definition of "average weekly wages" than that embraced in Paragraph 1, Sec. 1, Art. 8309, he must plead and establish conclusively by the evidence, or by the verdict of the jury (in jury cases), that such employee had not worked in such employment for the same or a different employer substantially the whole of the year immediately preceding the injury. In other words, to recover under subsection 3, sec. 1, Art. 8309, such plaintiff must plead, prove and obtain a finding from the court or jury that subsection 1 and subsection 2 are not applicable under the facts. American Emp. Ins. Co. v. Singleton, Tex.Com.App., 24 S.W.2d 26; Traders & General Ins. Co. v. Weatherford, Tex.Civ.App., 124 S.W.2d 423, and authorities there cited.

In the instant case, the evidence conclusively established as a matter of law the defendant-in-error's right to have the jury determine his "average weekly wages" under subsection 3.

There is no controversy about the fact that the injured employee was in the service of the alleged employer when injured nor wages paid him. The employer himself testified to the employment, and the records corroborated the same. The employee had only been engaged in this type of work for about thirty days and for this particular employer for four or five

days previous to his injury. The employee's testimony upon this point is clear and uncontradicted and is sufficiently corroborated by disinterested witnesses. Koenig v. Marti, Tex.Civ.App., 103 S.W.2d 1023, 1030; Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772.

The defendant-in-error further testified that during a substantial portion of the year preceding his injury he had been engaged in various types of work, such as farming, relief work, etc. In this he was corroborated by other testimony. The evidence considered as a whole sufficiently corroborates, if such be necessary, the fact of his non-employment during such year in the work in which he was injured, except as stated by him. New Amsterdam Cas. Co. v. Merrifield, Tex.Civ.App., 74 S.W.2d 185; Traders & General Ins. Co. v. Crouch, Tex.Civ.App., 113 S.W.2d 650.

It is quite clear from the testimony of disinterested witnesses that no one throughout that area of Texas where the accident was sustained worked at same or similar employment anything like 300 days or substantially a year prior to the date of defendant-in-error's injury. In fact, there would seem to be no controversy as to such non-employment of the defendant-in-error during this time in said section or elsewhere, and we do not believe that the record discloses that the insurance carrier made any serious effort to contradict his testimony in these respects.

■■ A study of the record convinces us that the court did not err in submitting the above issue and we do not believe that the propositions challenging the existence of any evidence to support the jury finding or urging that the same is against the great weight and preponderance of the evidence should be sustained. It seems to us that in presenting this group of propositions the plaintiff-in-error overlooks the spirit and intent of the Workmen's Compensation Law. Too much emphasis appears to be placed on the actual earnings of an employee at the time and prior to the injury to the disregard of the purpose of the Compensation Act to compensate the injured workman, not for actual loss of wages, but for the loss of his wage earning capacity.

In Maryland Cas. Co. v. Drummond, 114 S.W.2d 356, 360 (writ of error refused) the Beaumont Court of Civil Appeals held as follows:

"In Texas, as in a number of other states, it has been held that the compensation statute is designed to compensate the injured employee, not for loss of earnings, but for loss of earning capacity. The opinion of Justice Grissom in the Hamilton Case [Texas Employers' Ins. Ass'n v. Hamilton, Tex.Civ.App., 95 S.W.2d 767], supra, discusses that principle and cites numerous authorities in support of the conclusion. See, also, Traders & General Ins. Co. v. O'Quinn, Tex.Civ.App., 111 S.W.2d 859.

"So it would seem settled that when the subject of inquiry is a just and fair wage rate under first subdivision 3, evidence of earnings in other employment than that in which the claimant was injured is proper to be considered in determining his wage rate or 'earning capacity.'

"What then should be the scope of such inquiry? What evidence of earning capacity is proper to be considered? For example should an employee injured while employed and working as an unskilled laborer be permitted to show that he is in fact a skilled mechanic, capable of earning a large wage in such skilled employment, and recover compensation insurance upon a wage rate fixed on that basis?

"In the Bulis Case [Traders & General Ins. Co. v. Bulis, 129 Tex. 362, 104 S.W.2d 488], supra, Mr. Justice Harvey, speaking for the Commission of Appeals, opinion adopted by the Supreme Court, said: 'The board may hear evidence regarding what the injured employee earned the year previous to his injury, and, further, it may hear evidence bearing on any other pertinent matter which may aid it in doing what is just and fair to both the injured employee and the insurance carrier.'

"It seems to us that evidence to be 'pertinent' to the ascertainment of the just and fair wage rate contemplated should tend reasonably to establish the capacity of the claimant to earn in the same or similar employment to that in which he was engaged at the time of his injury. We do not understand the Bulis Case to hold otherwise. We think the compensation statute clearly contemplates that the earning capacity covered by the compensation insurance shall bear a direct relationship to the capacity of the insured to earn wages in the employment in which his injury is received."

Being of the opinion that the above propositions are not sustained by the record, the same are overruled.

■ Proposition 10, to the effect that the undisputed evidence did not establish the defendant-in-error's total incapacity by reason of the injury, is overruled. The testimony is at least conflicting. Dr. Cash testified in part as follows: "In my opinion he is not able and has not been able since April, 1936, to do any type of labor * * * I do not think he will ever be able * * * I think he is totally and permanently disabled * * * He is not able to do any type of work. I mean by that, manual labor."

For the same reasons proposition 11 is overruled. The verdict of the jury upon such testimony evidences no passion or prejudice on the part of the jury against appellant.

The nature of the testimony generally bearing upon the points raised by propositions 12, 13, 14 and 15 require that these propositions be overruled. The issue involved in each contention was properly passed to the jury.

■ By the sixteenth proposition it is contended that the court erred in submitting special issue No. 8, reading as follows: "Do you find from a preponderance of the evidence that the total incapacity, if any, sustained by the plaintiff as the natural result of such injuries, if any, will be temporary? Answer 'It will be temporary' or 'It will not be temporary.'" The jury answered "It will not be temporary" over the objection of the defendant to the effect that said issue improperly placed the burden of proof on the defendant to show that the plaintiff's total disability was in fact temporary.

■ The seventeenth proposition is in principle the same, but relating to partial incapacity. In substance, the contention is that the court erred in submitting special issue No. 11, reading as follows: "Do you find from a preponderance of the evidence that the plaintiff was partially incapacitated as the natural result of such injuries, if any, sustained by him on the 2nd day of April, 1936? Answer 'yes' or 'no'." To which the jury answered "No" over the objection of the defendant to the effect that "Such issue as * * * framed placed the burden of proof on the defendant to establish partial disability to the exclusion of total permanent disability and was therefore illegal and prejudicial in that it placed a greater burden of proof on the defendant than required by Workmen's Compensation Statutes."

These propositions are overruled on the authority of Wright v. Traders & General Ins. Co., Tex.Com.App., 123 S.W.2d 314, 316. Concerning the submission of such issues sometimes called "offensive and defensive" in this type of case, it is said in that opinion: "The issue affirmatively phrased correctly submits plaintiff's alternative basis of recovery and at the same time accords defendant an affirmative submission of its ground of defense. The burden of proof is not misplaced by an affirmative statement of the issue, as the defendant has the burden of establishing by a preponderance of the evidence its defense of partial incapacity. Nor has defendant any just ground of complaint to its submission affirmatively. It is no more onerous for defendant to establish the fact of partial incapacity by an inquiry stated affirmatively than it would be to establish by the same fact by an inquiry phrased negatively. The mere fact that it is more likely that a mistrial due to conflicting findings will result from its negative submission constitutes no just reason therefor. If the probability of such a result is the sole reason for negative submission it is not predicated upon a right, and if the court fails or refuses to submit the issue in such form the litigant desiring that it be so submitted suffers no denial of right. No reason is apparent why the finding of the jury upon the issue affirmatively submitted cannot justly serve the diverse purposes of plaintiff and defendant."

The opinion from which this excerpt is taken is generally enlightening and controlling upon the question here presented.

■ By the eighteenth proposition it is asserted that the court erred in submitting special issue No. 1, reading as follows: "Do you find from a preponderance of the evidence that plaintiff Bill Blevins sustained personal injuries on or about the 2nd day of April, 1936, at the time and in the manner alleged by him? Answer yes or no." To which the jury answered "Yes."

Before the issues were submitted to the jury, issue No. 1 was objected to by the plaintiff-in-error "for the reason that there is no evidence and certainly no evidence of sufficient probative value upon which to base the submission of such an issue to the jury, and for the further reason that

said issue as framed is on the weight of the evidence in that it refers to the allegations of the plaintiff herein and has the effect of advising the jury that they can determine such issue based upon the pleadings of the plaintiff instead of upon the evidence before them * * *."

In the light of these particular objections we do not believe any reversible error is shown. Undoubtedly there was an abundance of evidence to warrant the submission of such an issue and it is not perceived how the issue as worded could be upon the weight of the evidence. The issue carries no intimation that any allegation in the pleading was true or necessarily so.

However, if it be conceded that the plaintiff-in-error's objection raised a point on reference to pleading, it fails to show that any issue in the pleading referred to was without support in the evidence. No such specific objection to the issue pointed out any such vice. The proposition presents no reversible error. Andrews v. Wilding, Tex.Civ.App., 193 S.W. 192, writ refused; Southern Underwriters v. Sanders, Tex.Civ.App., 110 S.W.2d 1258; Texas Emp. Ins. Ass'n v. Hamor, Tex.Civ. App., 97 S.W.2d 1041, 1043; Traders & Gen. Ins. Co. v. Garry, Tex.Civ.App., 118 S.W.2d 340; Security Mut. Cas. Co. v. Bolton, Tex.Civ.App., 84 S.W.2d 552; Casualty Underwriters v. Lemons, Tex. Civ.App., 114 S.W.2d 333; McClelland v. Mounger, Tex.Civ.App., 107 S.W.2d 901; Freeman v. McElroy, Tex.Civ.App., 149 S.W. 428; Galveston, H. & S. A. Ry. Co. v. Parvin, 27 Tex.Civ.App. 60, 64 S.W. 1008; St. Louis Southwestern Ry. Co. v. Harrison, 32 Tex.Civ.App. 368, 73 S.W. 38, writ refused; New Amsterdam Cas. Co. v. Rutherford, Tex.Civ.App., 26 S.W. 2d 377 (4 and 5); Speer, Law of Special Issues (1932) p. 238, sec. 181; see Texas Digest, Trial, ⬖233(3).

For the reasons stated, the judgment of the trial court is affirmed.

FUNDERBURK, Justice (concurring).

In my opinion, it is never proper practice in submitting special issues to make reference to the pleadings for the subject-matter of the question or issue to be answered. That being true, I think it is a sufficient objection merely to point out that an issue is subject to that vice, and upon a question of the sufficiency of the objection it would not be necessary to state reasons why the reference to the pleadings would be prejudicial. In the instant case, from the standpoint of the jury, it is not certain that the issue referred to the pleadings. It referred to allegations, but plaintiff was a witness on the stand, and in a sense his testimony constituted allegations. I also concur in the judgment for the further reason that there was no contest in the evidence concerning the fact of an injury. Plaintiff's testimony concerning the injury was undisputed and was corroborated in such a way that I am inclined to think there was no necessity for submitting the issue to the jury, and hence there could be no prejudice from the manner of stating the issue.